STEPHEN T. PELLETIER, ESQ. (Bar No. 231236)
pelletiers@pricepelletier.com
JOHN W. NIELSEN, ESQ. (Bar No. 265532)
nielsenj@pricepelletier.com
ELIZABETH A. MARS, ESQ. (Bar No. 358438)
marse@pricepelletier.com
PRICE PELLETIER, LLP
401 "B" Street, Suite 1925
San Diego, CA 92101
TEL: 619.349.5295
FAX: 619.349.5225

Attorneys for Defendant
A&B EXPRESS, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SIMPLE SCIENCE, INC., a Texas Corporation,<br><br>Plaintiff,<br><br>v.<br><br>B-4 LOGISTICS, INC., a Nevada Corporation; A&B EXPRESS, LLC, an Ohio Limited Liability Company; and DSV SOLUTIONS, LLC, a South Carolina Limited Liability Corporation,<br><br>Defendants. | CASE NO. 2:26-CV-07028-AB-RAO<br><br>**DEFENDANT A&B EXPRESS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed concurrently with Declaration of Lauren Romans; [Proposed] Order*]<br><br>Courtroom: 7B<br>Judge: Hon. Andre Birotte Jr.<br><br>Date: December 18, 2026<br>Time: 10:00 a.m.<br><br>CASE FILED: June 26, 2026<br>TRIAL DATE: *Not Set* |

///

///

///

///

///

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 18, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 7B of the above-entitled Court, located at 350 West 1st Street, Courtroom 7B, 7th Floor, Los Angeles, California 90012, Defendant, **A&B EXPRESS, LLC** ("A&B") will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Count 1 and Count 2 as alleged in the Complaint filed by Plaintiff, **SIMPLE SCIENCE, INC.** ("Plaintiff") ("Motion"). The Motion is made on the following grounds:

- Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff fails to state a claim upon which relief may be granted with respect to Count 1 – Carmack Amendment claim Pursuant to 49 U.S.C. § 14706 Against A&B; and
- Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff fails to state a claim upon which relief may be granted with respect to Count 2 – Negligence Against A&B.

This Motion is based upon this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities in support thereof; the concurrently filed Declaration of Lauren Romans and exhibits thereto, and papers on file in this action, oral argument of counsel, and on such further evidence as may properly come before the Court at the hearing on the Motion, including matters of which this Court may take judicial notice.

Pursuant to Local Rule 7-3, counsel for A&B apprised Plaintiff's counsel of the bases for this Motion and met and conferred on October 29, 2026.

DATED: November 6, 2026 PRICE PELLETIER, LLP

By: /s/ Lauren Romans

STEPHEN T. PELLETIER, ESQ.
JOHN W. NIELSEN, ESQ.
ELIZABETH A. MARS, ESQ.
Attorneys for Defendant
A&B EXPRESS, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## FACTUAL ALLEGATIONS

This case arises out of an apparent theft of $357,439.95 worth of audio equipment (the "Cargo"), which was purchased by Plaintiff from Harman Professional Inc. ("Harman"). (Complaint, ¶ 13.) Plaintiff engaged Defendant, **B-4 LOGISTICS, INC.** ("B-4") to broker the transportation of the audio equipment, and agreed to pay $3,600.00 for their services. (Complaint, ¶¶ 14, 17.) The Cargo was to be shipped from Van Nuys, California to Carrollton, Texas; however, Harman requested the Cargo be picked up from its warehouse agent, Defendant, **DSV SOLUTIONS LLC** ("DSV") in Fontana, California. (Complaint, ¶ 16.) B-4 engaged A&B, as the motor carrier, to transport the Cargo. (Complaint, ¶ 18.)

The Cargo was to be picked up on November 4, 2025 and delivered on or about November 7, 2025 (the "Shipment"). (Complaint, ¶ 20.) Harman informed Plaintiff that, in order to release the Shipment for transport, A&B's driver was required to recite the Bill of Lading ("BOL") number to DSV and present his identification upon arrival. (Complaint, ¶ 21.) Harman shared the BOL number with Plaintiff and requested the driver's name. (Complaint, ¶ 22.) Plaintiff asked B-4 for the driver's name, which B-4 indicated was "John Eveleigh." (Complaint, ¶ 23.) Plaintiff provided Mr. Eveleigh's name to Harman, who then shared it with DSV. (Complaint, ¶ 24.)

On November 4, 2025, a man identifying himself as Mr. Eveleigh arrived at DSV and indicated he was a driver with A&B to pick up the Shipment. (Complaint, ¶ 25.) Mr. Eveleigh's commercial driver's license ("CDL") was provided to DSV but rejected by its system as appearing to have been tampered with. (Complaint, ¶¶ 26-27.) The BOL also listed the incorrect shipping address. (Complaint, ¶ 31.) Despite this, DSV still released the Shipment to Mr. Eveleigh, which never arrived in Carrollton and has not been located or recovered since. (Complaint, ¶¶ 28-29, 34.)

As it turned out, Mr. Eveleigh was not affiliated with A&B, used a false phone number, and has a criminal background and history of cargo theft claims against him. (Complaint, ¶ 30.) Mr. Eveleigh apparently stole the Shipment during transport and was able to do so by fraudulently gaining access to A&B's booking system or by the negligence of B-4, A&B, and DSV. (Complaint, ¶ 33.)

Plaintiff now claims damages no less than $357,439.95. (Complaint, ¶ 34.)

## II.

## PROCEDURAL HISTORY

Plaintiff initiated this action on June 26, 2026. (ROA No. 1.) Plaintiff submitted a Request for Clerk to Enter Default against A&B on September 10, 2026. (ROA No. 21.) Plaintiff and A&B entered into a Stipulation to Set Aside Default on October 2, 2026. (ROA No. 27.) This Court granted the Stipulation on October 7, 2026. (ROA No. 29.)

## III.

## MOTION TO DISMISS

Plaintiff's Complaint alleges two counts against A&B, two counts against B-4, and one count against DSV. As against A&B, Plaintiff alleges (1) a Carmack Amendment Claim Pursuant to 49 U.S.C. § 14706 and (2) Negligence. Each fails to state a viable claim for relief and should be dismissed for the following reasons:

- Plaintiff has not, and cannot, satisfy the first requirement necessary for a prima facie Carmack Amendment claim against A&B because Plaintiff cannot show that the Cargo was delivered to A&B, thus negating the initial delivery element of the claim;
- Plaintiff has not, and cannot, establish that A&B owed a legal duty to Plaintiff, because A&B was retained by B-4, not Plaintiff; and
- Plaintiff has not, and cannot, establish that the harm allegedly sustained by Plaintiff was a foreseeable consequence of A&B's conduct.

///

## IV.

## LEGAL STANDARD

Under Rule 12(b)(6), the Complaint fails to state a legally cognizable claim against A&B. While the court must accept as true a complaint's well pled factual allegations, a plaintiff must allege facts that state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## V.

## ARGUMENT

### A. Plaintiff's Complaint Fails To State A Prima Facie Carmack Amendment Claim.

The Carmack Amendment, codified at 49 U.S.C. § 14706, makes a motor carrier that receives property for interstate transportation, and the connecting carrier that delivers it, liable to the person entitled to recover under the receipt or bill of lading for the actual loss of or injury to that property. 49 U.S.C. § 14706(a)(1). That liability is receipt-based: it attaches only when a carrier actually receives the goods for transportation, and it does not reach goods that a carrier never received. To plead a prima facie Carmack Amendment claim, a plaintiff must allege that (1) the goods were delivered to the carrier in good condition, (2) the goods arrived damaged or were not delivered, and (3) the plaintiff sustained damages. *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964).

Only the first element is at issue, and the Complaint does not satisfy it. Plaintiff does not – and cannot – allege that the Cargo was ever delivered to or received by A&B. To the contrary, the Complaint affirmatively alleges that the Shipment was released to an impostor, Mr. Eveleigh, who was "not affiliated with A&B." (Complaint, ¶ 30.)

Central to the first element is the carrier's actual receipt of, and assumption of responsibility for, the goods. Three decisions confirm that Carmack liability does not attach where the defendant never received the shipment or where the theft occurred outside the carrier's period of responsibility.

Most directly, in *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96 (3d Cir. 2020), a truckload of copper disappeared after the shipper released it to a driver who never delivered it and was never heard from again. *Id.* at 97. The shipper sued the freight broker and the motor carrier, and, following a bench trial, the district court entered judgment in favor of both defendants. *Id.* The Third Circuit affirmed that the motor carrier was not liable under the Carmack Amendment because "no evidence indicate[d]" that it "arrived at [the shipper's] facility as the initial carrier to pick up the copper load." *Id.* at 100. The failure to establish the first element – delivery to and receipt by the initial carrier – defeated the claim. Although *AMG* is an unpublished, out-of-circuit decision and not binding on this Court, its reasoning is directly on point and persuasive here.

Two decisions from this District reach the same result on the principle that a carrier is not liable for a theft occurring after its duties are discharged. In *Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp. 2d 1103, 1111 (C.D. Cal. 2001), cargo was stolen from a rail yard by a driver who was either an employee of the pickup trucking company or someone impersonating one. The court granted the rail carrier summary judgment on the Carmack claim because the carrier's liability "ended when it safely delivered the shipment" to the destination ramp and "notified [the trucking company] that the shipment was available to be picked up." *Id.*

Likewise, in *NYK Line (N. Am.), Inc. v. Burlington N. & Santa Fe Ry. Co.*, 222 F. Supp. 2d 1176 (C.D. Cal. 2002), an impostor posing as the authorized pickup driver stole cargo seven hours after the rail carrier had de-ramped the container and notified the consignee of its availability. *Id.* at 1181-82. The court held that, even if a Carmack claim had been pleaded, the carrier would be entitled to summary judgment because its duties "were extinguished" upon delivery and notice, before the theft occurred. *Id.* Significantly, the carriers in *Intercargo* and *NYK Line* had in fact received and transported the goods, yet escaped liability once their period of responsibility ended. A&B, by contrast, is alleged never to have received the Cargo at all. The principle that Carmack liability turns on the carrier's actual possession applies with even greater force here.

Accepting the Complaint's allegations as true, as the Court must do on a motion to dismiss, those allegations defeat the first element rather than establish it. Mr. Eveleigh, the individual who collected the Cargo, was not affiliated with A&B. (Complaint, ¶ 30.) He merely purported to be an A&B driver. Nowhere does the Complaint allege that A&B, or any authorized agent acting on its behalf, ever took possession of the Shipment. Plaintiff may contend that A&B is nonetheless liable because B-4 engaged A&B as the carrier and the impostor may have obtained the pickup information through A&B's booking system. (Complaint, ¶¶ 18, 33.) But being designated to transport the Cargo is not the same as receiving it, and alleged unauthorized access to a booking system is the antithesis of a carrier taking lawful possession of goods for transportation. A third party's fraudulent acquisition of the Cargo cannot supply the receipt that the Carmack Amendment requires.

On the face of these allegations, A&B never received the Cargo, and the first element cannot be met. With these considerations in mind, Plaintiff has not, and cannot, set forth a cause of action for a Carmack Amendment claim against A&B, and Plaintiff's first count fails as a matter of law.

///

### B. Plaintiff's Complaint Fails To State A Cause Of Action For Negligence Against A&B.

#### 1. The Carmack Amendment Preempts The Negligence Claim

As a threshold matter, Plaintiff's negligence claim is barred by the Carmack Amendment. The Carmack Amendment is the exclusive cause of action for interstate-shipping claims alleging loss of or damage to property, and it "completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 584 (9th Cir. 2008) (citing *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687-88 (9th Cir. 2007)). Even where a state-law claim is not completely preempted, "[t]he Carmack Amendment constitutes a complete defense to common law claims against interstate carriers for negligence, fraud and conversion." *Id.* at 584-85; *see Hall*, 476 F.3d at 689 (Carmack "required the dismissal of a common law negligence claim against a carrier"); *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992). This District has applied that rule where cargo was stolen in interstate transit, holding that the Carmack Amendment "preempts all state common law claims and constitutes the exclusive avenue for recovery in any suit brought against an interstate carrier for loss or damage to the transported goods." *NYK Line*, 222 F. Supp. 2d at 1179; *accord Intercargo*, 185 F. Supp. 2d at 1112.

To support its Carmack claim, Plaintiff pleads that B-4 engaged the motor carrier, A&B, to transport the Cargo. (Complaint, ¶ 18.) Plaintiff's negligence count seeks to recover the value of the Cargo ($357,439.95) for its loss in transit. (Complaint, ¶¶ 44-47.) The claim seeks precisely the relief the Carmack Amendment governs and is thus preempted, regardless of its label. The fact Plaintiff frames A&B's alleged negligence as a failure to secure its "IT system" does not avoid preemption, because the harm pleaded and the damages sought are the loss of the goods in interstate transit. *See White*, 543 F.3d at 585-86 (claim preempted where it arises "from the same conduct" giving rise to the loss of shipped property).

The two grounds are mutually reinforcing: if A&B is the interstate carrier Plaintiff alleges, the negligence claim is preempted; and if A&B is not, the negligence claim fails for the independent reasons set forth below. Either way, Count 2 must be dismissed.

**2. Even If The Negligence Claim Is Not Preempted, Plaintiff Cannot Establish Duty Or Causation.**

Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. . . .There is no federal general common law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). A federal court exercising diversity jurisdiction must apply the substantive law of the forum state, including state law governing the parties' rights and liabilities. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109-110 (1945); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-427 (1996). As a state law cause of action, this Court must adjudicate the sufficiency of Plaintiff's negligence claim under California law.

Cal. Civil Code § 1714(a) states, in relevant part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." " 'Courts … invoke[] the concept of duty to limit generally "the otherwise potentially infinite liability which would follow from every negligent act…." ' " *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1143. The conclusion that a defendant did not have a duty constitutes a determination by the court that public policy concerns outweigh, for a particular category of cases, the broad principle enacted by the Legislature that one's failure to exercise ordinary care incurs liability for all the harms that result. *Id.* In the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create [an exception] only where 'clearly supported by public policy.' *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771.

"A departure from the fundamental principle [that all persons are liable for injuries caused by failure to exercise reasonable care] involves the balancing of a number of considerations; [including] foreseeability of harm to the plaintiff…[and] the closeness of the connection between the defendant's conduct and the injury suffered…." *Rowland v. Christian* (1968) 69 Cal.2d 108, 112-13. The court's task in determining duty "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed...." *Ballard v. Uribe* (1986) 41 Cal.3d 564, 572, fn. 6. The closeness of the connection between the defendant's conduct and resulting injury is " 'strongly related to the question of foreseeability' " and " 'accounts for third party or other intervening conduct.' " *Shipp v. Western Engineering, Inc.* (2020) 55 Cal.App.5th 476, 498-99. Where the connection between the defendant's conduct and injury sustained by plaintiff is too attenuated, courts may decline to find a duty existed between the two parties. *Id.* at 499.

Here, Plaintiff alleges that A&B owed a duty to Plaintiff to exercise reasonable care in utilizing its IT system management to prevent theft of the shipments tendered to A&B; that it failed to protect its IT system with adequate security when a fraudulent actor, "Mr. Eveleigh" was able to impersonate an A&B driver and take the Shipment; that A&B failed to use reasonable care to protect its IT system; and due to A&B's breach of duty, "Mr. Eveleigh" was able to obtain possession, custody, and control of the shipment without authority, causing Plaintiff damages of at least $357,439.95. (Complaint, ¶¶ 44-47.) A&B now challenges the sufficiency of these allegations.

///

///

///

In this case, A&B's alleged negligence – failure to protect its IT system with adequate security – and the harm resulting to Plaintiff – the theft of the Shipment by Mr. Eveleigh – is too attenuated for a duty to be imposed on A&B. Plaintiff alleges that due to A&B's breach of duty, Mr. Eveleigh was able to obtain control of the Shipment. (Complaint, ¶ 47.) However, Plaintiff also identifies a critical break in the causal connection between A&B's alleged negligence and Mr. Eveleigh's taking possession of the Shipment: the release of the Shipment by DSV to Mr. Eveleigh. Prior to DSV releasing the Shipment, Mr. Eveleigh provided DSV with his CDL. (Complaint, ¶ 26.) DSV's system rejected Mr. Eveleigh's CDL "due to the document appearing to have been tampered with." (Complaint, ¶ 27.) Despite this, DSV released the Shipment to Mr. Eveleigh, who then allegedly stole the Shipment. (Complaint, ¶¶ 32.) Thus, even if Mr. Eveleigh was able to utilize A&B's IT system to impersonate himself as an A&B driver, DSV ultimately made the decision to release the Shipment to Mr. Eveleigh, despite DSV's own system rejecting the impostor's CDL. It was DSV's decision to release the Shipment to Mr. Eveleigh that ultimately allowed the impostor to steal the Shipment.

Further, the alleged harm is not a foreseeable consequence of A&B's alleged negligence. As stated previously, Mr. Eveleigh was ultimately able to obtain possession of the Shipment because DSV released it to him, despite having a reasonable basis not to do so. In keeping with the reasoning set forth in *Ballard v. Uribe, supra,* 41 Cal.3d at 572, this Court must "evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." The intervening negligence of DSV is the dispositive consideration. DSV's release of the Shipment after its own system flagged Mr. Eveleigh's CDL as tampered with was an independent, intervening act that breaks the chain of causation.

///

///

Under California law, an independent intervening act "is a superseding cause relieving the actor of liability for his negligence" when it is "highly unusual or extraordinary and hence not reasonably foreseeable." *Cline v. Watkins* (1977) 66 Cal. App. 3d 174, 178; *see also Lucas v. City of Long Beach* (1976) 60 Cal. App. 3d 341, 351 (intentional act of a third person is a superseding cause of harm unless reasonably foreseeable). A warehouse agent's decision to hand over goods to a person its own system has just rejected is precisely the kind of extraordinary, unforeseeable act that supersedes any antecedent lapse in A&B's booking security. There is nothing in the Complaint which alleges that A&B released the Shipment to Mr. Eveleigh – at worst, Mr. Eveleigh simply obtained necessary information in order to impersonate himself as an A&B driver. The harm that resulted to Plaintiff was the result of DSV's decision to release the Shipment to Mr. Eveleigh.

With these considerations in mind, Plaintiff has not, and cannot, set forth a cause of action for Negligence against A&B, and Plaintiff's second count fails as a matter of law.

**C. Plaintiff's First And Second Counts Should Be Dismissed With Prejudice.**

"'Futility of amendment can, by itself, justify the denial of a motion for leave to amend.' If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (citations omitted). Here, granting leave to amend would be futile as to both counts alleged against A&B.

With regard to the Carmack Amendment claim, Plaintiff has thus far conceded that the Shipment was delivered to Mr. Eveleigh, not A&B, for transport, and that Mr. Eveleigh was not affiliated with A&B. Thus, Plaintiff cannot establish that the Shipment was delivered to A&B for purposes of establishing a prima facie Carmack Amendment claim against A&B, and such failure cannot be remedied on amendment without contradicting the allegations in the Complaint.

With regard to the Negligence claim, Plaintiff has thus far conceded that it was DSV, not A&B, who ultimately released the Shipment to Mr. Eveleigh – despite its own system rejecting Mr. Eveleigh's CDL as having been tampered with. Thus, Plaintiff cannot establish that a duty was owed by A&B to Plaintiff under these circumstances, because the connection between A&B's alleged negligence in failing to secure its IT system and Plaintiff's resulting harm is too attenuated. In all events, because any state-law negligence theory against A&B as the interstate carrier is preempted by the Carmack Amendment, no amendment could cure Count 2.

## VI.

## CONCLUSION

Based on the foregoing, A&B respectfully requests that this Court dismiss the first and second counts alleged in Plaintiff's complaint with prejudice.

DATED: November 6, 2026 PRICE PELLETIER, LLP

By: *Lauren Bomans*

STEPHEN T. PELLETIER, ESQ.
JOHN W. NIELSEN, ESQ.
ELIZABETH A. MARS, ESQ.
Attorneys for Defendant
A&B EXPRESS, LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant A&B Express, LLC, certifies that this brief contains 3,848 words in this Notice and Memorandum of Points and Authorities, and 450 words in the Declaration of Lauren Romans, inclusive of the pleading caption and signature blocks in each, for a total of 4,298 words, which complies with the word limit [7,000] of L.R. 11-6.1.

Lauren Romans

Declarant, LAUREN N. ROMANS

# PROOF OF SERVICE

I, the undersigned, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within-entitled action; my business address is 401 “B” Street, Suite 1925, San Diego, California 92101.

I hereby certify that on November 6, 2026, I electronically filed the foregoing **DEFENDANT A&B EXPRESS, LLC’S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF’S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF LAUREN N. ROMANS; [PROPOSED] ORDER** with the Clerk of the Court by using the CM/ECF System. I certify that participants in the case that are registered CM/ECF users will receive service that will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on November 6, 2026, at San Diego, California.